UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        Case No. 1:15:CR:90-01

DOMINICK T. JOHNSON                          HON. GORDON J. QUIST

        Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## REGARDING MOTION TO SUPPRESS (Dkt. # 61)

Defendant, Dominick Johnson, has been charged in a superseding indictment with various offenses arising out of several bank robberies that occurred in and around Kalamazoo, Michigan between May 2014 and January 2015. Defendant has moved to suppress a statement that he made to law enforcement officers on March 31, 2015 at the Van Buren County Jail on the grounds that the statement was obtained in violation of his Fifth Amendment rights to remain silent and to counsel. In response, the Government submitted an audio/video recording of the entire interview and asserts that an evidentiary hearing is unnecessary because the Court can determine from the recording whether Defendant's rights were violated.

Having reviewed the entire recorded interview, the Court concludes that an evidentiary hearing is unnecessary. Because the recording shows that Defendant's rights were not violated, the Court will deny Defendant's motion.

### I. FINDINGS OF FACT

On February 27, 2015, Trooper John Moore of the Michigan State Police stopped a vehicle, in which Defendant was a passenger, traveling westbound on Interstate 94, west of Kalamazoo, Michigan. Trooper Moore searched the vehicle and found a semiautomatic pistol. Defendant was arrested and taken to the Van Buren County Jail, where he was detained on a state weapons charge.

On March 31, 2005, FBI Agent Brent Johnson and Detective Bill Sperrel[1] of the Kalamazoo County Sheriff's Department went to the jail to interview Defendant about several bank robberies that they were investigating. The agent and the detective met with Defendant in an interview room. Defendant was handcuffed during the entire interview.

At the beginning of the interview, the agent and the detective introduced themselves and said that they wanted to talk to Defendant. Defendant said, "I don't know what this is about," and the agent and the detective told Defendant that they would explain why they were there. The agent told Defendant that they were not there to talk about why Defendant was currently in jail and did not want to discuss anything about the circumstances of that case. Defendant then responded, "I need an attorney present. I don't have anything to say. I don't know what this is about." The agent said, "We can explain that, but since you said you want an attorney present, you know, we'll stop that, unless you want us to explain what this is about, and we can do that." Defendant then asked, "Are you trying to charge me with something, because I ain't . . . ," at which point the detective said, "Eventually? The answer is yes."

The agent told Defendant that they would explain what the case was about if he wanted them to do that, but noted that Defendant had said that he wanted an attorney present. Defendant then asked what the case was about, and the detective responded, "either you want an attorney present first, or not, I mean, at any time you can exercise your rights." The detective presented Defendant an advice of rights form, *see Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), to review so that everyone was "very clear" on Defendant's wishes. The detective asked Defendant to read the rights aloud, but Defendant instead insisted on knowing what the meeting was about. After the detective and the agent told Defendant that they could proceed to discuss the case only after he signed the form, Defendant said, "Yeah, I understand my rights." The agent then read aloud each

---

[1] The detective's last name is not entirely clear from the recording. Agent Johnson testified before the Court at the evidentiary hearing held on September 23, 2015.

2

of the rights listed on the form, and Defendant verbally confirmed that he understood them. Defendant persisted in his effort to find out why the agent and the detective were there to talk to him, but the agent advised Defendant that they needed to get through "step one"—having Defendant sign the advice of rights form—before they could talk to him about the case. The agent and the detective both reiterated that Defendant did not have to talk to them and that Defendant could invoke his right to an attorney and stop the interview at any time.

After Defendant asked additional questions about the case the agent and the detective were investigating, Defendant signed the waiver form. The agent then explained that by signing the form, Defendant acknowledged that he waived his rights and was willing to talk to them without a lawyer, but that he could request one at any time. The agent and the detective then proceeded to interview Defendant for approximately two and one-half hours.

## II. Conclusions of Law

Defendant contends that the statements he made during March 31, 2015 interview should be suppressed because they were obtained in violation of his Fifth Amendment rights to remain silent and to counsel, as expounded in *Miranda* and *Edwards v. Arizona*, 451 U.S. 477, 101 S. Ct. 1880 (1981). Pursuant to *Miranda*, prior to engaging a suspect in custodial interrogation, a law enforcement officer must advise the suspect of his Fifth Amendment rights against self-incrimination and to an attorney. 384 U.S. at 444, 86 S. Ct. at 1612. If the suspect invokes his *Miranda* rights, all interrogation must cease or must cease until an attorney is present if the suspect requests one. *Edwards*, 451 U.S. at 485, 101 S. Ct. at 1885. The assertion of rights must be "unambiguous or unequivocal." *Davis v. United States*, 512 U.S. 452, 461–62, 114 S. Ct. 2350, 2357 (1994); *see also Berghuis v. Thompkins*, 560 U.S. 370, 381–82, 130 S. Ct. 2250, 2260 (2010) (finding "good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously"). An officer may continue or resume interrogation without an attorney if the suspect reinitiates it by indicating a willingness and a desire to talk generally about his case. *See*

3

*United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994). The suspect may validly waive his rights and respond to interrogation if the waiver was knowing and voluntary. *Berghuis*, 560 U.S. at 382, 130 S. Ct. at 2260.

Defendant argues that he invoked his rights to remain silent and to counsel at the outset of the interview and that the agent and the detective tricked him into revisiting his decision and signing the rights waiver form by continuing to engage him in conversation after he exercised his rights. The Government responds that there was no *Miranda* violation because Defendant was not in custody for purposes of *Miranda*, and *Miranda* warnings were thus not even required. The Government further argues that even if *Miranda* warnings were required, they were properly given and Defendant failed to properly invoke either his right to counsel or his right to remain silent. Finally, the Government argues that Defendant immediately reinitiated the interview by seeking information about the case from the agent and the detective.

The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." [2] *Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S. Ct. 711, 713 (1977) (quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612). The custody determination "involv[es] two essential questions: '[F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.'" *Coomer v. Yukins*, 533 F.3d 477, 485 (6th Cir. 2008) (quoting *Thompson v Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 465 (1995)). In addition to considering whether a reasonable person in the defendant's position would have felt free to leave, courts may consider the following factors in a custody analysis:

---

[2] The defendant has the burden of establishing that he was in custody in a motion to suppress his statements for a *Miranda* violation. *United States v. Peck*, 17 F. Supp. 3d 1345, 1353–55 (N.D. Ga. 2014); *United States v. Marchese*, 966 F. Supp. 2d 223, 239 (W.D.N.Y. 2013); *United States v. Peterson*, 506 F. Supp. 2d 21, 23 (D.D.C. 2007).

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police . . . [or] acquiesced to their requests to answer some questions.

*United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003) (citation omitted).

In *Howes v. Fields*, __ U.S. __, 132 S. Ct. 1181 (2012), the Supreme Court reversed the Sixth Circuit's ruling on a habeas corpus petition and rejected its categorical rule that "the questioning of a prisoner is always custodial when the prisoner is removed from the general prison population and questioned about events that occurred outside the prison." *Id.* at 1187. In addition to noting that prior Supreme Court decisions did not support such a rule, the Court clarified that restraint on freedom of movement is not alone determinative of custody. Rather, the environment must "present[] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* at 1189–90. The Court cited three reasons for concluding that imprisonment is not inherently custodial under *Miranda*. First, a prisoner is already incarcerated, so there is no "shock" from the possibility of arrest that generally arises during police station interrogations. *Id.* at 1190. "[W]hen a person who is already serving a term of imprisonment is questioned, there is usually no such change [in circumstances]." *Id.* at 1190–91. Second, a person who is already incarcerated is unlikely to be "lured into speaking by a longing for prompt release." *Id.* Finally, "a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence." *Id.* at 1191. Instead, a court should focus on all of the circumstances of the interrogation. *Id.* at 1192. Doing so, the Court concluded that the habeas petitioner was not in custody for purposes of *Miranda*. The facts that the petitioner did not invite the interview or consent to it in advance, that the petitioner was not advised that he was free to decline to speak with the deputies, that the interview lasted for between five and seven hours and continued well past the petitioner's normal bedtime, that the deputies who

5

questioned the petitioner were armed, and that one of the deputies used a very sharp tone and profanity on one occasion all suggested a coercive atmosphere. *Id.* at 1192–93. On the other hand, the Court noted, the petitioner was told at the outset of the interrogation that he could leave and return to his cell whenever he wanted, the petitioner was not physically restrained or threatened, the petitioner was interviewed in a well-lit, average-sized conference room where he was not uncomfortable and was offered food and water, and the door to the room was open at times, all of which demonstrated an environment in which a reasonable person would have felt free to terminate the interrogation and leave. *Id.* at 1193. The Court concluded that these circumstances, "especially the undisputed fact that [the petitioner] was told that he was free to end the questioning and to return to his cell," indicated that the petitioner was not in custody. *Id.* at 1194.

In the instant case, there are few circumstances indicating that Defendant was interviewed in a coercive environment: Defendant was handcuffed during the entire interview, and unlike the petitioner in *Howes*, he was not specifically advised that he was free to return to his cell whenever he wanted. However, being handcuffed during an interview with non-prison staff is simply "an ordinary and familiar attribute of life behind bars." *Id.* at 1192. Moreover, the agent and the deputy repeatedly told Defendant that he did not have to speak with them and could terminate the interview at any time, and they refused to discuss the substance of the case until Defendant acknowledged and waived his rights, both verbally and in writing, and indicated that he wanted to speak with them. In addition, the interview occurred in a well-lit, average-sized conference room, the agent and the deputy were not visibly armed and spoke in normal, non-threatening tones without using profanity, Defendant did not appear to be uncomfortable, and the interview—in contrast to the interview in *Howes*—was comparatively brief and conducted during daytime hours. Considering all of these circumstances, the Court concludes that Defendant was not in custody for purposes of *Miranda*. Accordingly, *Miranda* rights did not attach to the non-custodial interview. *See United States v. Malcom*, 435 F. App'x 417, 421 (6th Cir. 2011).

6

Even if the Court concluded that the interview was custodial in nature, Defendant failed to assert his rights in an unambiguous and unequivocal manner. Although Defendant stated that he had nothing to say and that he needed an attorney present, he quickly added that he did not know why the agent and the deputy were not required to terminate the interview. *See id.* at 422. In fact, after Defendant made this statement, he continued to press the agent and the deputy to explain the purpose of the interview, which they did only after Defendant waived his rights.

## Conclusion

For the foregoing reasons, the Court will deny Defendant's motion to suppress.

A separate order will enter.


Dated: December 7, 2015            /s/ Gordon J. Quist
                                               GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE